The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner John A. Hedrick and the briefs and oral arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission affirms the Deputy Commissioner's decision and enters the following Opinion and Award.
 *************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, at the hearing on 18 November 1997 and by post-hearing agreement as:
 STIPULATIONS
1. On 17 April 1997, the date of plaintiff's alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant.
3. An Industrial Commission Form 22, Wage Chart, marked as Stipulated Exhibit Number Two, is admitted into evidence.
4. An American Airlines job description for a sales and service representative, marked as Stipulated Exhibit Number Three, is admitted into evidence.
5. A set of plaintiff's medical records received from plaintiff's counsel on 15 December 1997, is admitted into evidence.
 EVIDENTIARY RULINGS
The objections appearing in the deposition of Mr. Gorrod at pages 51 and 52 are SUSTAINED.
 *************
Based upon all of the competent evidence of record, the undersigned makes the following additional
 FINDINGS OF FACT
1. At the time of the hearing on 18 November 1997, plaintiff was fifty-two years old. Plaintiff was a high school graduate. Prior to beginning her work for defendant, plaintiff worked for nine and one-half years for a travel agency. This work consisted primarily of escorting tour groups.
2. On 15 February 1992, plaintiff became employed by defendant as a reservationist. Plaintiff continued to work in this position through the date of the hearing. In this position, plaintiff was assigned to a work station that was equipped with a telephone headset, computer monitor and keyboard, a work surface that was thirty-one and one-half inches high and a height adjustable chair. Ergonomically, plaintiff's work station had a low risk of causing cumulative trauma disorders.
3. As a reservationist, plaintiff received incoming telephone calls from defendant's customers. During these calls, plaintiff used her keyboard and monitor to obtain information necessary to make the customers' flight reservations or to answer their inquiries about defendant's services. Unlike the work of a medical or legal transcriptionist, plaintiff's typing duties did not require her to type constantly. When handling a customer's telephone call, plaintiff used a variety of short key strokes to obtain different screens of information. In addition to the time she spent typing during each telephone call, plaintiff spent time orally relaying information to the caller.
4. During each work shift, plaintiff was responsible for answering telephone calls for a total of seven and one-half hours. She was allowed one-half hour for lunch. She was also allowed two fifteen minutes breaks. Plaintiff received less than 120 telephone calls per work shift. On average, each telephone call lasted five and one-half minutes. During each call, plaintiff typed intermittently, making approximately seventy-five key strokes per telephone call. The majority of her typing involved filling in blanks, or field cells, as opposed to typing long sentences of words. Plaintiff did not type between incoming telephone calls. Between telephone calls, plaintiff was permitted to stand or otherwise move about within the immediate vicinity of her workstation.
5. Defendant allowed plaintiff and its other reservationists to perform activities that were unrelated to their work during the breaks they had between incoming telephone calls. Some reservationists sewed or read books during these breaks in their work. During breaks between telephone calls, plaintiff regularly worked with co-employees putting jigsaw puzzles together. Plaintiff or her co-employees purchased the jigsaw puzzles for use during the breaks between incoming telephone calls. Plaintiff and one other co-employee were able to complete a jigsaw puzzle consisting of three hundred pieces during a single shift, unless the day was an especially busy one.
6. On or about 17 April 1997, plaintiff began experiencing bilateral hand pain and numbness. Upon referral by defendant, plaintiff presented to Dr. Edwards on 5 September 1997. On that date, she continued having hand pain and numbness. Plaintiff's hand pain and numbness were the result of mild carpal tunnel syndrome, left greater than right. Dr. Edwards injected plaintiff's left carpal tunnel with cortisone. When plaintiff returned to Dr. Edwards on 19 September 1997, her left wrist symptoms had improved. On examination, plaintiff had no strength or sensation abnormalities. She did have some symptoms that were consistent with left carpal tunnel syndrome. Since plaintiff's left wrist symptoms had improved with the cortisone injection, Dr. Edwards injected plaintiff's right carpal tunnel.
7. When plaintiff returned to Dr. Edwards on 4 December 1997, she had normal strength in all muscles supplied by her median and ulnar nerves. She had no sensory deficit related to her carpal tunnel syndrome. Dr. Edwards did not excuse plaintiff from work. However, he did recommend that plaintiff avoid elbow and wrist flexion. Plaintiff could avoid elbow and wrist flexion by adjusting the height of her chair upwards.
8. Plaintiff's carpal tunnel syndrome and her cubital tunnel syndrome were caused by an idiopathic condition. Plaintiff's carpal tunnel syndrome and her cubital tunnel syndrome were not significantly aggravated or accelerated by her employment with defendant. Plaintiff's employment with defendant did not place her at an increased risk of significantly aggravating or accelerating her carpal tunnel syndrome or her cubital tunnel syndrome as compared to members of the general public not so employed.
 *************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff's carpal tunnel syndrome and her cubital tunnel syndrome, or the aggravation thereof, were not due to causes and conditions that were characteristic of and peculiar to her employment with defendant, and therefore, were not occupational diseases. G.S. § 97-53(13).
2. Plaintiff is entitled to no compensation under the North Carolina Workers' Compensation Act. Id.
 *************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each party shall bear its own costs.
 S/ ________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER